DUKANE CORPORATION, APPELLANT, V.
SIDES CONSTRUCTION COMPANY AND
SAFECO INSURANCE COMPANY OF AMERICA, APPELLEES.

302 N.W.2d 721

Filed March 6, 1981. No. 43176.

Eugene L. Pieper of Thompson, Crounse & Pieper for appellant.

Waldine H. Olson of Schmid, Ford, Mooney & Frederick for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The plaintiff brought this action against the general contractor and its bonding company to recover on a

labor and material payment bond for materials furnished to a subcontractor whose contract was canceled. Following discovery, both parties filed motions for summary judgment. The District Court granted defendants' motion for summary judgment and dismissed plaintiff's petition.

On October 26, 1977, Sides Construction Company, as general contractor, entered into a construction contract with Bellevue school district to renovate Bellevue East High School. Sides Construction Company entered into a subcontract with Hy-Gain Electronic Systems Corporation on November 14, 1977, under which Hy-Gain was to furnish all plant labor, equipment, and materials necessary to revise the clock and program system for the school renovation. In November and December of 1977 Hy-Gain ordered various materials from Dukane Corporation, the plaintiff, which were apparently to be used by Hy-Gain in connection with its subcontract. The materials were all shipped to Hy-Gain in Lincoln, Nebraska, except for some "back boxes" which were mistakenly delivered to Sides Construction Company rather than Hy-Gain. None of the materials were ever delivered to the job site in Bellevue, Nebraska, nor used by Sides, nor incorporated into the job.

On January 13, 1978, Sides received an invoice from Hy-Gain for certain unspecified "equipment" for the school job which was identified as being located in Hy-Gain's warehouse. In January 1978 Hy-Gain filed a Chapter XI petition for a bankruptcy arrangement in the U.S. District Court for Nebraska.

After receiving Hy-Gain's invoice in January 1978, and throughout February and March of 1978, Sides attempted to locate and secure delivery of the materials through numerous phone calls to Hy-Gain and the plaintiff. Being unable to obtain delivery of the materials, Sides canceled the Hy-Gain contract by letter dated April 7, 1978.

In order to complete the school job, Sides issued a

new subcontract to Electronic Contracting Company on June 9, 1978, for a stipulated contract price of $20,800. Electronic furnished the materials and completed the new subcontract and has been fully paid by Sides.

On February 14, 1979, plaintiff filed its petition against Sides and Safeco to recover the sum of $12,708.95 for the materials that remained in the possession of Hy-Gain and which were not furnished to the job site nor used in the performance of the contract. The District Court entered summary judgment for the defendants and the plaintiff has appealed.

The bond in the present case is a statutory bond required to be furnished in connection with any contract for the erecting or repair of any public building or structure where the general provisions of the mechanic's lien laws do not apply and where the mechanics, laborers, and materialmen have no lien to secure payment for labor, material, and equipment. The relevant portions of Neb. Rev. Stat. § 52-118 (Reissue 1978) require all public boards "to take from the person, persons, firm, or corporation to whom the contract is awarded a bond, in a sum not less than the contract price, with a corporate surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material and equipment rental which is actually used or rented in the erecting, furnishing, or repairing of the public structure or improvement or in performing the contract."

The bond in this case is conditioned to make prompt payment to all claimants as defined, "for all labor and material used or reasonably required for use in the performance of the Contract." The bond also provides: "A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil,

gasoline, telephone service or rental of equipment directly applicable to the Contract."

Plaintiff's position is that the language "used or reasonably required for use" extends coverage under the bond to any materialman who supplies goods to a subcontractor when those goods are reasonably required and intended for use in the performance of the contract. The position is that recovery may be had even though the goods are never delivered to the job site nor applied to or used in the performance of the contract.

The essential language of the statute requires that the bond be conditioned "for the payment for material and equipment rental which is actually used or rented in . . . performing the contract." It is also clear that the purpose of § 52-118 is to provide protection to materialmen and laborers in the construction or repair of public buildings where the provisions of the general mechanic's lien laws do not apply. Where the general mechanic's lien laws are applicable this court has consistently held that: "The lien of a materialman for materials furnished for the erection of a building, by virtue of an agreement with the contractor, extends to such materials only as are used in or delivered at the building for use therein." *The Wickes Corporation v. Frye*, 202 Neb. 23, 273 N.W.2d 663 (1979). The clear legislative policy is to provide the statutory bond coverage for the protection of laborers and materialmen who would otherwise be protected by general mechanic's and materialmen's lien laws.

The plaintiff contends that the language of the bond in the present case provides for a broader coverage than the statute itself because it covers materials "used or reasonably required for use" and argues that a contract of a surety for compensation should be construed most strongly against the surety and in a light most favorable to those entitled to protection under the contract.

Several courts have interpreted the language of

"used or reasonably required for use," although technically disjunctive rather than conjunctive, to mean materials actually used by the contractor in furtherance of the contract, and have treated the lanugage "reasonably required for use" as being inserted in the bond to protect the surety against extravagant and unnecessary use of labor and materials. See, *Gallimore, Inc. v. Home Indem. Co.*, 432 F. Supp. 434 (W.D. Va. 1977); *Middle-West Concrete v. General Ins. Co.*, 267 S.E.2d 742 (W. Va. 1980); *Standard Accident Ins. Co. of Detroit v. Rose*, 314 Ky. 233, 234 S.W.2d 728 (1950); 10 Appleman, Insurance Law and Practice, § 5941, p. 150.

It is apparent that the materials in the present case were not actually used in performing the contract nor were they delivered at the building site. The judgment of the District Court was correct and is affirmed.

AFFIRMED.