GERHOLD CONCRETE COMPANY, INC., A DIVISION OF
LYMAN-RICHEY CORPORATION, APPELLEE AND
CROSS-APPELLANT, V. ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE,
AND FIRST DAKOTA ENTERPRISES, INC.,
APPELLEE AND CROSS-APPELLEE.

695 N.W.2d 665

Filed April 28, 2005. No. S-03-1064.

Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellant.

William T. Oakes, Michael J. Leahy, and Andrew C. McElmeel, of Stinson, Morrison & Hecker, L.L.P., for appellee Gerhold Concrete Company, Inc.

Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellee First Dakota Enterprises, Inc.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

St. Paul Fire and Marine Insurance Company (St. Paul) provided a payment bond for First Dakota Enterprises, Inc. (First Dakota), a general contractor for a public construction project. Gerhold Concrete Company, Inc. (Gerhold), supplied concrete to CMS, Inc., First Dakota's subcontractor. CMS failed to pay Gerhold for the concrete, and Gerhold sued First Dakota on a contract theory and St. Paul on the performance bond.

The district court dismissed First Dakota from the suit but determined that a jury could find that Gerhold could recover against St. Paul on the bond. A jury returned a verdict for Gerhold. St. Paul appeals the district court's denial of its motion for a directed verdict. St. Paul claims that Neb. Rev. Stat. § 52-118.01 (Reissue 1998) required Gerhold to give 4 months' written notice to First Dakota before it could proceed against the bond, that Gerhold failed to give notice, and thus, Gerhold's claim must fail.

Under § 52-118.01, for Gerhold to recover on the performance bond, it must give written notice to the contractor within 4 months from the date of the last materials supplied, unless it had a contractual relationship, express or implied, with the contractor. Gerhold acknowledges that it did not give written notice to First Dakota. This appeal requires us to determine whether there was a contractual relationship, express or implied, that excused Gerhold from providing written notice to First Dakota.

Resolving every controverted fact in Gerhold's favor and giving it the benefit of every reasonable inference, we determine that the jury could find that First Dakota told Gerhold that it would pay for concrete supplied to CMS. Thus, the jury could conclude that a contract, and hence, a contractual relationship, existed, and the district court properly overruled the motion for a directed verdict. Likewise, we determine that the court erred when it granted First Dakota's motion to dismiss because there was evidence from which a jury could determine that a contract was formed. Accordingly, we affirm in part, and in part reverse and remand for a new trial against First Dakota.

## BACKGROUND

This appeal arises from a public construction project to build a veterans home in Norfolk, Nebraska. First Dakota obtained discounted prices from Gerhold when it bid on the project. According to Gerhold, it offered those prices only if it were the sole concrete supplier for the project. First Dakota was awarded the project as general contractor. Some time later, Steve Johnson, who was Gerhold's plant manager, spoke with Wayne July, the project manager for First Dakota. According to Johnson, July confirmed that First Dakota would use Gerhold as its concrete supplier. July admitted that he committed to using Gerhold "to a certain extent," but did not commit to having Gerhold as the exclusive supplier.

First Dakota subcontracted the concrete work to CMS and specified that CMS should use Gerhold as the supplier. Gerhold agreed to bill CMS for the concrete. Through May, June, and part of July 1999, First Dakota paid CMS, but CMS failed to pay Gerhold.

According to Johnson, he met with July and informed him that CMS failed to pay the invoices for May through July 1999,

which amounted to about $100,000, and that Gerhold would stop supplying concrete if it did not receive payment. The record contains the following colloquy between Gerhold's attorney and Johnson:

Q. What was . . . July's response to learning that First Dakota might lose its concrete supplier?

A. . . . July was, of course, concerned. And he told me, he says, you don't want to do that. . . .

I said, what about the CMS account, that past-due account? And Wayne July said, you keep that concrete coming, and First Dakota, don't worry about it, First Dakota will take care of it.

. . . .

Q. What did you say when . . . July said that First Dakota would take care of the unpaid invoices, just keep the concrete coming?

A. I agreed we would keep the concrete coming.

Johnson later stated again that July agreed to take care of unpaid invoices if Gerhold continued to supply concrete. July denied that Gerhold ever notified him that it would stop supplying concrete if it were not paid or that he agreed to pay for unpaid invoices. He stated that had Gerhold quit delivering concrete, he would have obtained a new supplier. First Dakota paid all further invoices directly to Gerhold but did not pay for the previous, unpaid invoices for May through July.

Gerhold filed suit against First Dakota for breach of contract and against St. Paul on the bond seeking payment for the unpaid May through July 1999 invoices. After Johnson's testimony, St. Paul and First Dakota moved for a directed verdict. They argued that First Dakota did not enter into a contract for payment and that there was no contractual relationship, express or implied, for Gerhold to recover payment for past invoices. The court granted First Dakota's motion for directed verdict, stating that the evidence failed to show the formation of a contract for payment of the unpaid invoices; specifically, the court determined that Gerhold failed to show the terms of any oral contract to pay. The court then reviewed § 52-118.01, and it concluded there was evidence that a general contractual relationship existed between Gerhold and First Dakota based on the agreement that Gerhold

would provide concrete at specified prices and that First Dakota would exclusively use Gerhold's concrete. Because of that contractual relationship, the court determined a jury could find that § 52-118.01 relieved Gerhold from the notice requirement and denied St. Paul's motion for a directed verdict.

The jury returned a verdict for $91,582.28, and the district court denied Gerhold's request for prejudgment interest, finding that the amount of recovery was in controversy. Gerhold had initially sought $111,137.34, but later stipulated that the amount should be reduced by $16,473.06. St. Paul appeals, and Gerhold cross-appeals. We granted St. Paul's petition to bypass.

## ASSIGNMENTS OF ERROR

St. Paul assigns that the district court erred by (1) failing to grant its motion for a directed verdict and to dismiss the action against it, (2) failing to allow evidence that Gerhold previously acknowledged receipt of a payment that was greater than it would admit at trial, and (3) refusing to permit cross-examination of a witness about a prior inconsistent statement in answers to interrogatories.

On cross-appeal, Gerhold assigns, rephrased, that the district court erred by (1) sustaining the motion for directed verdict for First Dakota and (2) denying an award of prejudgment interest.

## STANDARD OF REVIEW

■ A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Livingston v. Metropolitan Util. Dist., ante* p. 301, 692 N.W.2d 475 (2005).

■ Whether a contract exists is a question of fact. See *Viking Broadcasting Corp. v. Snell Publishing Co.*, 243 Neb. 92, 497 N.W.2d 383 (1993).

■ Whether prejudgment interest should be awarded is reviewed de novo on appeal. See *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999).

## ANALYSIS

St. Paul argues that Gerhold cannot recover on the bond because it failed to give notice as required by § 52-118.01. Gerhold argues,

however, that it had a direct or implied contractual relationship with First Dakota that would relieve it from the notice requirements and allow it to recover under the bond.

Neb. Rev. Stat. § 52-118 (Reissue 1998) requires a bond for certain public building projects. It provides protection to materialmen and laborers in the construction or repair of public construction projects when the provisions of the general mechanic's lien laws do not apply. See *Dukane Corp. v. Sides Constr. Co.*, 208 Neb. 227, 302 N.W.2d 721 (1981).

Section 52-118.01 provided in part:

> Every person who has furnished labor or material in the prosecution of the work provided for in the contract set out in subsection (1) of section 52-118, in respect of which a bond is furnished under such section, and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or her or material was furnished or supplied by him or her for which such claim is made shall have the right to sue on such bond for the amount or the balance thereof unpaid at the time of the institution of such suit and to prosecute the action to final execution and judgment for the sum or sums justly due him or her. *Any person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing such bond shall have a right of action upon the bond upon giving written notice to the contractor* within four months from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

(Emphasis supplied.) Section 52-118.01 relieves suppliers from giving notice if they have a contractual relationship, express or implied, with the contractor. Here, the issue is whether Gerhold had a contractual relationship with First Dakota that would exempt it from giving notice under § 52-118.01. Gerhold argues that any contractual relationship is sufficient, even if it is not related to payment or would not provide notice to the contractor

of unpaid subcontractor bills. St. Paul, however, argues that the contractual relationship must be a specific contract to pay for supplies and that there was no such contract between Gerhold and First Dakota.

Courts that have considered the kind of contractual relationship that would obviate the notice requirement normally do so in the context of the federal Miller Act. The purpose and language of § 52-118.01 are the same as in the Miller Act. The notice language of the Miller Act mirrors § 52-118.01. See 40 U.S.C.A. § 3133(b) (West 2005) (formerly 40 U.S.C.A. § 270b (2000)). Thus, we find the federal cases relevant.

Some appellate courts addressing the issue have held that a contractual relationship between a supplier and a general contractor for something other than payment for materials is not sufficient to obviate the Miller Act's notice requirements. *United States v. Hesselden Construction Co.*, 404 F.2d 774 (10th Cir. 1968); *United States v. Van de Riet*, 316 F.2d 912 (4th Cir. 1963); *United States v. Praught*, 270 F.2d 235 (1st Cir. 1959). As a result, courts have held that the contractual relationship that precludes the notice requirement must relate to a direct promise or contract to pay for materials. For example, some courts have held that a contract under which a contractor agreed to issue checks payable jointly to both the subcontractor and supplier failed to establish a direct contractual relationship, express or implied, that would obviate the statutory notice requirements. See, *United States v. Hesselden Construction Co., supra*; *Dial Block Co. v. Mastro Masonry*, 374 N.J. Super. 13, 23, 863 A.2d 373, 379 (2004) (comparing state statute with language referring only to " 'direct contract' " to broader language of Miller Act). In contrast, when a general contractor orally agreed to pay not only for future supplies but for previous, unpaid shipments, the supplier was exempt from notice requirements under the Miller Act. *American Cas. Co. of Reading, Pa. v. Southern Mat. Co.*, 261 F.2d 197 (4th Cir. 1958).

The Georgia Court of Appeals has formulated a slightly different approach. Interpreting a statute with language identical to § 52-118.01, the court determined that it would look to the course of contractual dealings between the contractor and supplier to determine whether there was an express or implied contractual

relationship. *Huddleston Concrete Co. v. Safeco Ins. Co. &c.*, 186 Ga. App. 531, 368 S.E.2d 117 (1988). The court recognized that in the course of dealing between the contractor and the supplier, circumstances could arise when the contractor would have actual or constructive notice of a claim despite the absence of a direct contract or promise of payment. The court held that when a contractor orally promised to pay a supplier for unpaid shipments out of retainage when the project was complete, a contractual relationship existed, express or implied, that obviated the statute's notice requirement. *Id.*

We determine that under either formulation of the rule, Gerhold presented evidence of a contractual relationship that would exempt it from the notice requirement of § 52-118.01. In reviewing a trial court's ruling on a motion for directed verdict, we treat the motion as an admission of the truth of all competent evidence submitted on behalf of Gerhold. Gerhold is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. See *Livingston v. Metropolitan Util. Dist., ante* p. 301, 692 N.W.2d 475 (2005).

Here, resolving every controverted fact in Gerhold's favor and giving Gerhold the benefit of every reasonable inference, Gerhold presented evidence that First Dakota orally agreed to "take care of" the unpaid invoices if Gerhold continued to supply concrete. First Dakota, however, denied that it agreed to pay the past invoices. Although the record presents conflicting evidence that First Dakota agreed to pay for the May through July 1999 invoices, a jury could reasonably find that First Dakota had actual notice of the unpaid invoices and orally contracted to pay them. Because Gerhold presented evidence that would allow a jury to find an express or implied contractual relationship between Gerhold and First Dakota, the district court did not err when it overruled St. Paul's motion. Accordingly, we affirm the court's overruling the motion for a directed verdict.

## CROSS-APPEAL

### DISMISSAL OF CONTRACT AGAINST FIRST DAKOTA

On cross-appeal, Gerhold argues that the district court erred when it dismissed Gerhold's contract claim against First Dakota.

First Dakota contends that a contract was not formed as a matter of law and that all that was formed was an "agreement to agree." Reply brief for appellee First Dakota at 19.

To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). The question whether the parties intended to contract is a factual one, not a legal one, and, except in the clearest cases, the question is for the finder of fact to resolve. *Viking Broadcasting Corp. v. Snell Publishing Co.*, 243 Neb. 92, 497 N.W.2d 383 (1993).

First Dakota correctly argues that an "agreement to agree" is not enforceable in Nebraska. See *Nebraska Nutrients v. Shepherd, supra.* But a contract is not indefinite if the parties can tell when it has been performed, and it is enough if, when that time arrives, there is in existence some standard by which performance can be tested. *Id.* A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *Id.*

Here, Gerhold presented evidence that a representative of First Dakota, in direct response to an inquiry about the May through July 1999 invoices, said "you keep that concrete coming, and First Dakota, don't worry about it, First Dakota will take care of it." In addition, evidence showed that Gerhold then agreed to continue providing concrete. Unlike circumstances when the parties agreed to finalize contract terms in the future, here, Gerhold presented evidence that would allow a jury to determine that a specific oral contract had been formed under which First Dakota agreed to pay for the May through July invoices in exchange for Gerhold's continuing to provide concrete. Whether a contract was formed is a question of fact that should have been submitted to the jury. Accordingly, we agree that the court erred when it dismissed the contract claim against First Dakota and reverse, and remand for a new trial against First Dakota.

PREJUDGMENT INTEREST

Gerhold next argues that the district court erred by refusing to award prejudgment interest. St. Paul argues, however, that the claim was not liquidated.

 A plaintiff can recover prejudgment interest only when the claim is liquidated, that is, when no reasonable controversy exists to either the plaintiff's right to recover or the amount. *Davis v. Davis*, 265 Neb. 790, 660 N.W.2d 162 (2003). Thus, a two-prong inquiry is required. A dispute must not exist either to the amount due or to the plaintiff's right to recover. See *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).

Here, a reasonable controversy existed both to Gerhold's right to recover and to the amount due. A reasonable controversy existed under § 52-118.01 whether there was a contractual relationship. Further, the amount in controversy changed during the proceedings. Gerhold initially sought $111,137.34, but later stipulated that the amount should be reduced by $16,473.06. Because the issue presented a reasonable controversy about whether Gerhold could recover and the amount of the recovery, the claim was not liquidated. Accordingly, we affirm the district court's order denying prejudgment interest.

## REMAINING ASSIGNMENTS OF ERROR

In its brief, St. Paul states:

> In the event this matter is reversed and a new trial occurs, it will be necessary for the appellate court to review some of the trial court's evidentiary rulings which would have been prejudicial to the appellant and First Dakota had the jury been called upon to make a decision respecting the appellee's alleged contract claim.

Brief for appellant at 25. Accordingly, we address the remaining assignments of error.

EXCLUSION OF LIEN WAIVER

St. Paul contends that the court erred by excluding evidence of a lien waiver between Gerhold and CMS. Before trial, Gerhold moved in limine to exclude evidence concerning how it credited payments from CMS that were made in July and September 1999. According to Gerhold, under an agreement with CMS, it credited

payments to an open account, with the oldest invoices paid first. Gerhold anticipated that St. Paul and First Dakota would argue that the payments came from funds paid to CMS by First Dakota or that Gerhold should have applied the payments to the May through July invoices for the project instead of older invoices on the open account.

The record indicates that the court excluded the evidence before trial under Neb. Rev. Stat. §§ 27-401 and 27-403 (Reissue 1995). At trial, St. Paul and First Dakota offered an exhibit showing a partial lien release between Gerhold and CMS for $70,000. After an offer of proof at trial, the court sustained Gerhold's objection and did not receive the exhibit into evidence. The court did allow evidence of other documents showing the charges that Gerhold sought to recover.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Kvamme v. State Farm Mut. Auto. Ins. Co.*, 267 Neb. 703, 677 N.W.2d 122 (2004). Because the exercise of judicial discretion is implicit in determinations of relevancy and admissibility under §§ 27-401 and 27-403, the trial court's decision will not be reversed absent an abuse of discretion. *Snyder v. EMCASCO Ins. Co.*, 259 Neb. 621, 611 N.W.2d 409 (2000).

Here, Gerhold argued in its motion in limine that the evidence was irrelevant or unduly prejudicial because it did not relate to the May through July 1999 invoices. The court then excluded the evidence. We have reviewed this assignment of error and determine that the court did not abuse its discretion.

### EVIDENCE CONCERNING INCONSISTENT STATEMENTS IN PLEADINGS

St. Paul argues that the court erred by not allowing an inquiry about inconsistent statements in Gerhold's pleadings or answers to interrogatories. At trial, a witness stated that he was not aware of a joint check issued to Gerhold and CMS. St. Paul and First Dakota then sought to inquire about a pleading which alleged that a joint check had been issued. They stated that they desired to impeach witnesses regarding "claims made in the petition that

they are no longer claiming." Gerhold objected and stated it would drop those claims, and First Dakota and St. Paul then argued that the matter affected credibility. The court sustained the objection based on relevancy.

The record shows that the inquiry related to claims that Gerhold was no longer pursuing and that the evidence could be confusing to a jury. We have reviewed this assignment of error and determine that the court did not abuse its discretion.

## CONCLUSION

We determine that resolving every controverted fact in Gerhold's favor and giving it the benefit of every reasonable inference, the evidence showed that under the contractual relationship between First Dakota and Gerhold, First Dakota contracted to pay for the May though July 1999 invoices or that First Dakota had actual knowledge of the claim that would excuse Gerhold from the notice requirements of § 52-118.01. We also determine that the court erred when it dismissed the claim against First Dakota. Gerhold was not entitled to prejudgment interest, and we determine that the remaining assignments of error are without merit. Accordingly, we affirm in part, and in part reverse and remand for a new trial against First Dakota.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.