# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 12-2592

———————————————

GGNSC Omaha Oak Grove, LLC, doing business as Golden Living Center of Sorensen

*Plaintiff - Appellant*

v.

Ivan Payich, as Special Administrator for the Estate of Nada Payich

*Defendant - Appellee*

——————

Appeal from United States District Court
for the District of Nebraska - Lincoln

——————

Submitted: December 11, 2012
Filed: March 4, 2013

——————

Before LOKEN, MELLOY, and COLLOTON, Circuit Judges.

——————

MELLOY, Circuit Judge.

GGNSC Omaha Oak Grove, LLC, d/b/a Golden Living Center of Sorensen ("Sorensen"), appeals the district court's[1] denial of its Application to Compel Arbitration in a suit filed by Ivan Payich, as Special Administrator for the Estate of

———————————————

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

Nada Payich ("the Estate"). Sorensen argues that Nada Payich was a third-party beneficiary of an Arbitration Agreement between Sorensen and Ivan Payich and that the Estate is therefore compelled to arbitrate its claims. Because we find no clear error in the district court's determination that Sorensen failed to prove it executed a valid contract with Ivan Payich, we affirm.

I.

On September 3, 2009, Nada Payich executed a Durable Power of Attorney ("POA") giving her son, Ivan Payich, authority over her healthcare decisions in the event a physician deemed her incapable of making those decisions herself. On September 4, 2009, Nada was admitted as a resident of the Golden Living Center of Sorensen ("the Center") in Omaha, Nebraska. Sorensen owns the Center. No party claims a physician declared Nada incapable of making healthcare decisions, either by September 4, 2009, or at any time prior to her death.

On the day Nada was admitted to the Center, Ivan signed an Admission Agreement. The Admission Agreement states, "[D]isputes under this Agreement may be submitted to arbitration, if the Resident elects to do so, by signing a separate agreement executed between the parties. Agreeing to arbitration is not a condition of admission or continuing care." Ivan signed the Admission Agreement on the line for Nada's legal representative and wrote "(son)" after his signature. The Admission Agreement names Nada and the Center as the parties to the contract. Nada did not sign the Admission Agreement.

On the day Nada was admitted to the Center, Ivan also signed an Arbitration Agreement. The Arbitration Agreement provides that all claims "relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration." The Arbitration Agreement allows an authorized representative to sign on the resident's behalf "[i]f

-2-

the resident is unable to consent or sign this provision because of physical disability or mental incompetence." Ivan signed on the line marked "Resident" and wrote "(son)" after his signature. The Arbitration Agreement names Nada and the Center as the parties to the contract. Nada did not sign the Arbitration Agreement.

Nada subsequently died. After Nada's death, Ivan, as Special Executor for the Estate, sued Sorensen in Nebraska state court for negligent care of Nada, among other claims. Sorensen then filed an Application to Compel Arbitration in federal court. Sorensen initially alleged that Ivan signed the Arbitration Agreement on Nada's behalf and that the Estate was therefore bound by it. Later, Sorensen alternatively alleged that Ivan signed the Arbitration Agreement in his individual capacity and that Nada was a third-party beneficiary of the contract between Sorensen and Ivan.

The district court first found Ivan did not have authority under the POA to sign the Arbitration Agreement on Nada's behalf because no physician had deemed Nada incapable of making healthcare decisions. Additionally, the district court did not find any evidence Nada had given Ivan any other form of authority to sign the Arbitration Agreement on her behalf. Finally, the district court ruled Nada could not have been a third-party beneficiary of the Arbitration Agreement because Sorensen did not prove it executed a valid contract with Ivan in his individual capacity.

II.

The parties agree Nebraska law governs Sorensen's Application to Compel Arbitration. We have jurisdiction under 28 U.S.C. § 1291 because the district court's denial of Sorensen's Application was a final decision disposing of all claims.

On appeal, Sorensen argues only that Nada was a third-party beneficiary of the Arbitration Agreement—Sorensen has abandoned its argument that Ivan signed the Arbitration Agreement on Nada's behalf. For Nada to be a third-party beneficiary,

Sorensen must have validly executed the Arbitration Agreement with Ivan in his individual capacity. See Marten v. Staab, 543 N.W.2d 436, 442 (Neb. 1996) ("A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee."). "A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract." Houghton v. Big Red Keno, Inc., 574 N.W.2d 494, 498 (Neb. 1998) (citing Hoeft v. Five Points Bank, 539 N.W.2d 637, 644 (Neb. 1995)). "The terms of a contract are to be accorded their plain and ordinary meaning" and enforced according to those terms. Stackhouse v. Gaver, 801 N.W.2d 260, 269 (Neb. Ct. App. 2011) (quoting Ruble v. Reich, 611 N.W.2d 844, 849–50 (Neb. 2000)). Whether a contract exists is a question of fact in Nebraska, see Gerhold Concrete Co. v. St. Paul. Fire & Marine Ins. Co., 695 N.W.2d 665, 672 (Neb. 2005), and we review the district court's factual findings for clear error. Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 998 (8th Cir. 2006).

Sorensen argues "Ivan signed the Admission Agreement and Arbitration Agreement with his mother as the intended beneficiary of both Agreements." As proof, Sorensen points to Ivan's signature on the Arbitration Agreement and to the fact that Sorensen provided Nada with care. According to Sorensen, Nada's acceptance of the benefits of the two agreements—her acceptance of care by the Center—binds the Estate to the terms of the agreements.

We disagree.[2] Neither Nada's purported acceptance of benefits nor the terms of the Arbitration Agreement prove a contract between the Center and Ivan. First, and most significantly, the Arbitration Agreement names Nada and the Center as the contracting parties. Additionally, the Arbitration Agreement only provides signature

---

[2]Sorensen argues the Arbitration Agreement became part of the Admission Agreement upon execution. However, the two agreements could only merge if both were validly executed. We focus on the invalidity of the Arbitration Agreement and express no opinion regarding the validity of the Admission Agreement.

lines for the Center's representative, for the resident, and, in case the resident is incompetent, for the resident's legal representative. Thus, on the face of the Agreement, the parties intended only the Center and the resident or the resident's representative to enter the contract. Ivan was not the resident, and Sorensen has abandoned its argument that Ivan was Nada's representative. Although Ivan signed on the line for the resident, he wrote "(son)" after his signature, suggesting he attempted to sign as Nada's representative rather than in his individual capacity. The fact that all parties now agree Ivan was not authorized to sign on Nada's behalf does not change the parties' intentions at the time of signing.

On this record, we find no clear error in the district court's determination that Sorensen did not prove a valid contract with Ivan. Without a contract between Sorensen and Ivan, there is no contract of which Nada could have been a third-party beneficiary.[3] Therefore, the Estate is not bound by the Arbitration Agreement.

## III.

We affirm the district court's ruling.

———————————————

———————————————

[3]As Sorensen notes, some state courts have enforced arbitration agreements against nursing home residents' estates using the third-party beneficiary doctrine. However, in those cases, "the agent entered the admissions agreement not merely as a purported representative *but also in his or her individual capacity*." Ping v. Beverly Enters., Inc., 376 S.W.3d 581, 596 (Ky. 2012) (emphasis added) (citing Cook v. GGNSC Ripley, LLC, 786 F. Supp. 2d. 1166 (N.D. Miss. 2011)); see also Forest Hill Nursing Ctr., Inc. v. McFarlan, 995 So.2d 775 (Miss. Ct. App. 2008). In other words, courts have enforced arbitration agreements using the third-party beneficiary doctrine when they have concluded or assumed the nursing home and the signer formed a valid underlying contract. Here, the district court specifically determined that the Center and Ivan did *not* form a valid contract.