VIKING BROADCASTING CORPORATION, A UTAH CORPORATION, APPELLANT, V. SNELL PUBLISHING CO., INC., A NEBRASKA CORPORATION, APPELLEE.

497 N.W.2d 383

Filed March 26, 1993. No. S-90-1193.

Jerry J. Grossart and Larry W. Beucke, of Parker, Grossart, Bahensky & Beucke, for appellant.

Douglas Pauley, of Conway, Connolly & Pauley, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

The plaintiff-appellant, Viking Broadcasting Corporation, a Utah corporation, seeks to force the defendant-appellee, Snell Publishing Co., Inc., a Nebraska corporation, to merge itself into Viking. The district court sustained Snell's motion for summary judgment, and Viking here asserts that the court erred in so doing. We affirm.

Viking's suit rests on a typed 1³/₄-page "Letter of Intent" it prepared and the parties signed on or about April 27, 1988. The document, on Viking letterhead and addressed to Snell, reads:

> This letter, when executed by yourselves in the space provided below, will form our Letter of Intent with respect to the proposed merger of [Snell] into [Viking] or a corporation formed by Viking for the purpose of entering into the transaction.

1. Merger. With your consent, an Agreement and Plan of Merger will be entered into whereby Snell will be merged into the Viking subsidiary. As part of the merger, the Viking subsidiary will accede to all of the assets and assume all of the liabilities of Snell as of the date of the merger. Certain assets, such as the lemon grove and other rental property located in Hastings, Nebraska, will be spun off prior to the merger and will not be transferred to Viking.

2. Consideration. As consideration for the acquisition of Snell, the Snell shareholders shall receive, at the Closing:

a. Three Million Dollars ($3,000,000) in cash or certified funds;

b. Ten Million (10,000,000) shares of Viking common stock.

The common stock transferable hereby will be "restricted" stock, bearing a legend restricting transfer. However, we will grant you the right to have your stock registered at such time Viking registers its stock in a general registration of its securities with the Securities and Exchange Commission. If no such registration occurs within 2 years after the Closing, you shall have the one-time right, for a period of one year, to demand that Viking register your shares at Viking's expense.

3. Adjustment of Shares. In the event that one year after the Closing or at the time Viking registers its shares with the SEC, whichever shall first occur, the market value of the aforesaid 10,000,000 shares is less than $8,000,000, you shall be entitled to receive additional Viking shares so as to bring the total value of your shareholdings to $8,000,000, but any additional shares will be transferred only if you grant irrevocable voting proxies therein to Randel Boesen.

4. Covenant not to Compete. At Closing, Viking will enter into a covenant not to compete with Robert Snell and Nancy Swickard, where under [sic] they will agree not to compete with the business of Viking for a period of 5 years, for a consideration of $200,000 per year.

5. Indemnification Regarding Litigation. The present shareholders of Snell will agree to indemnify and hold Viking harmless with respect to any present litigation, including Earl Taylor v. Snell Publishing. Amounts payable to Robert Snell and Nancy Swickard under the covenant not to compete and consulting contract will act as partial security for the indemnification.

6. Due Diligence. Viking shall have the opportunity to conduct a thorough due diligence investigation. Any information gained during the due diligence investigation must be kept in strict confidence, in the event the merger is not consummated. Each party agrees not to disclose the pendency of the merger until the merger is consummated, or deal in the stock of Viking.

If the foregoing meets with your approval, please sign this letter in the space provided below. The offer contained in this letter is open until May 2, 1988, and the Closing of the merger must be consummated not later than July 31, 1988.

Viking contends that summary judgment was inappropriate because there are genuine issues of material fact concerning whether there was a meeting of the minds as to the parties' intent to enter into a merger contract as reflected in the April 27 letter. Viking is, of course, correct in asserting that summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1933). The controlling question is whether there exist in this case genuine issues as to material facts or as to the ultimate inferences which may be drawn from them, as Viking contends, or whether, as Snell contends and the district court impliedly found, there are no factual issues and Snell is entitled to judgment as a matter of law.

The nature of the controversy before us has been aptly described by the U.S. Court of Appeals for the Seventh Circuit as follows:

We have a pattern common in commercial life. Two firms reach concord on the general terms of their transaction. They sign a document, captioned "agreement in principle" or "letter of intent", memorializing these terms but anticipating further negotiations and decisions—an appraisal of the assets, the clearing of a title, the list is endless. One of these terms proves divisive, and the deal collapses. The party that perceives itself the loser then claims that the preliminary document has legal force independent of the definitive contract.

*Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 424 (7th Cir. 1989). Having thus defined the nature of the controversy, the threshold task is to determine if the issue as to whether the April 27 document constitutes an enforceable contract is one of law or one of fact.

As might be expected, the decisions on this point are by no means harmonious. In *Opdyke Investment v Norris Grain*, 413 Mich. 354, 320 N.W.2d 836 (1982), litigation arose over the effect of a letter of intent to build a sports arena. The Supreme Court of Michigan reversed the trial court's grant of the defendants' motion for accelerated judgment. The court noted that "[w]hether the parties intend to be bound only by a formally written and executed final document is a question of fact, not a question of law; in most cases the question is properly left to the jury." *Opdyke Investment*, 413 Mich. at 360, 320 N.W.2d at 838. The court further wrote:

The trial court and the Court of Appeals majority carefully scrutinized the March 11 letter in order to ascertain the parties' intent. We eschew that approach, in part to emphasize that such a factual inquiry should have been made only by a trial court factfinder after consideration of all of the relevant evidence to be produced at trial on the point.

*Opdyke Investment*, 413 Mich. at 362, 320 N.W.2d at 839.

A similar result was reached in *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir. 1976). In that case, several months of negotiations seeking to establish a business relationship between the parties culminated in the drafting of a detailed six-page memorandum of intent, which

included a paragraph contemplating the subsequent preparation of a definitive agreement. The district court granted Fuqua's motion for summary judgment. The court of appeals reversed, holding that "the question whether the parties intended a contract is a factual one, not a legal one, and, except in the clearest cases, the question is for the finder of fact to resolve." *Arnold Palmer Golf Co.*, 541 F.2d at 588.

For other cases holding that the determination of whether a contract exists is a question of fact, see, e.g., *American Cyanamid Co. v. Elizabeth Arden Sales Corp.*, 331 F. Supp. 597 (S.D.N.Y. 1971); *Mid-Continent Telephone Corp. v. Home Telephone Co.*, 319 F. Supp. 1176 (N.D. Miss. 1970); and *Itek Corporation v. Chicago Aerial Industries, Inc.*, 248 A.2d 625 (Del. 1968).

Although one can point to factual distinctions between at least some of the aforecited cases and the one before us—e.g., in *Opdyke Investment*, the letter was lengthy and detailed, and in *Arnold Palmer Golf Co.*, not only was the memorandum detailed, but the party claiming it to be nonbinding had issued a prior contrary press release—the fact is that *Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc., supra*, provides the better analysis. Therein, Empro showed interest in purchasing the assets of Ball-Co. After preliminary negotiations, Empro sent Ball-Co a three-page letter of intent to purchase the latter's assets. The letter stated " '[t]he general terms and conditions of such proposal (which will be subject to and incorporated in a formal, definitive Asset Purchase Agreement signed by both parties).' " *Empro Mfg. Co., Inc.*, 870 F.2d at 424. Moreover, the letter stated that " 'Empro's purchase shall be subject to the satisfaction of certain conditions precedent to closing including, but not limited to' " the definitive Asset Purchase Agreement and, inter alia, " '[t]he approval of the shareholders and board of directors of Empro.' " *Id*. The parties signed the letter of intent, and negotiations continued until the contentious issue of a security interest in Empro's land caused Ball-Co to abandon the deal. Empro's suit was dismissed by the district court for the failure to state a claim.

The U.S. Court of Appeals for the Seventh Circuit affirmed the district court's dismissal. On the issue of whether the

determination of the legal force of the letter was an issue of law or fact, the *Empro Mfg. Co., Inc.* court wrote:

> Empro insists on appeal that the binding effect of a document depends on the parties' intent, which means that the case may not be dismissed—for Empro says that the parties intended to be bound, a factual issue. Empro treats "intent to be bound" as a matter of the parties' states of mind, but if intent were wholly subjective there would be no parol evidence rule, no contract case could be decided without a jury trial, and no one could know the effect of a commercial transaction until years after the documents were inked. That would be a devastating blow to business. Contract law gives effect to the parties' wishes, but they must express these openly. Put differently, "intent" in contract law is objective rather than subjective . . . .

*Empro Mfg. Co., Inc.*, 870 F.2d at 424-25. See, also, *Knight v. Sharif*, 875 F.2d 516 (5th Cir. 1989); *Hill v. McGregor Mfg. Corp.*, 23 Mich. App. 342, 178 N.W.2d 553 (1970).

In keeping with our rules that intent in the realm of contract law is to be viewed objectively, not subjectively, see *Professional Serv. Indus. v. J.P. Construction*, 241 Neb. 862, 491 N.W.2d 351 (1992), and *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985), and that in order to establish an express contract there must be a definite proposal and an unconditional and absolute acceptance thereof, *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991), we conclude that here the April 27 letter of intent was so cursory, indefinite, and conditional as to fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby. Not only is the document, which involves a $14-million transaction, sketchy, it recites in numbered paragraph 1 that it is with Snell's consent that an agreement and plan of merger would be entered into; it declares in the same paragraph that certain Snell assets, only some of which are specified, would not be included in the transaction; and further, it acknowledges in numbered paragraph 6 that the merger might not be consummated.

Under those circumstances, there can be no factual issues,

and Snell is indeed entitled to judgment as a matter of law. Thus, the judgment of the district court is affirmed.

AFFIRMED.

SHANAHAN, J., not participating.