# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3558

_____

Kelly Conolly,                          *
                                        *
            Appellant,                  *
                                        *       Appeal from the United States
      v.                                *       District Court for the
                                        *       District of Nebraska.
James D. Clark,                         *
                                        *            [PUBLISHED]
            Appellee.                   *

_____

Submitted:   April 21, 2006
    Filed:   August 11, 2006

_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

       Kelly Conolly, a citizen of Iowa, brought this diversity-based breach of contract suit against James D. Clark, a citizen of Nebraska, claiming that Clark breached an oral agreement to allow Conolly to purchase all of the common stock of Clark Brothers Transfer, Inc. The district court[1] granted summary judgment to Clark, and Conolly appeals.

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

In the summary judgment context, we review the district court's grant of summary judgment de novo, viewing the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party and applying the same standards as the district court. Mershon v. St. Louis Univ., 442 F.3d 1069, 1073 (8th Cir. 2006). "Summary judgment is appropriate if the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). The district court found the following facts to be undisputed for purposes of summary judgment.

Conolly worked as a terminal manager for Clark Brothers Transfer, Inc., a trucking company. James Clark was the company's president and majority shareholder. In early 2003, Conolly began discussing with Clark the possibility of Conolly purchasing the company. After months of negotiating, they executed a confidentiality agreement on October 17, 2003, which enabled Conolly to obtain financial information about the company for evaluation purposes. In a letter, Clark asked Conolly to provide a written offer to purchase within 10 to 14 days of October 28, 2003. On November 12, 2003, Conolly sent an expressly non-binding letter of intent that did not include an offer to purchase. The letter stated in part that the transaction would be structured to include a purchase price, yet to be determined, as well as an assumption of liabilities, employment agreements, and a covenant not to compete, all yet to be determined.

Clark and Conolly met again on November 13, 2003, to discuss the purchase, and they orally agreed upon a purchase price of $15,500,000 for the stock, but all other terms of the acquisition were left to be negotiated later. Clark requested that Conolly send him an offer in the form of a "letter of intent" within two weeks, a period ending on December 1, 2003. On January 6, 2004, Conolly's attorney sent Clark a letter indicating that Conolly was interested in purchasing the company "pursuant to the terms contained in this **non-binding** letter of intent." (Appellant's App. at 61.) The letter set forth how the transaction would be structured–including

a purchase price, an assumption of liabilities, a statement that employment agreements would be determined later, and a covenant not to compete. In conclusion, the letter again stated that it was a non-binding letter and did not represent a binding commitment by either party. A formal acceptance form was attached, but it was never signed by either Conolly or Clark. On February 16, 2004, Clark elected to sell the company to another buyer for approximately $30,500,000.

Conolly brought this breach of contract claim, invoking the district court's diversity jurisdiction and alleging that Clark had breached an oral agreement entered into on November 13, 2003. The district court granted Clark's motion for summary judgment, concluding that the oral agreement did not form a contract under Nebraska law. There is no dispute that Nebraska law governs this contract dispute, and we review the district court's interpretation of state law de novo. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991); Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 408 F.3d 460, 464 (8th Cir. 2005).

On appeal, Conolly argues that the district court erred by concluding as a matter of law that the parties' oral agreement of November 13, 2003, was not sufficiently definite to form a binding contract. "[I]n order to establish an express contract there must be a definite proposal and an unconditional and absolute acceptance thereof." Viking Broad. Corp. v. Snell Publ'g Co., 497 N.W.2d 383, 386 (Neb. 1993). Additionally, under Nebraska law, when considering whether the parties intended to be bound by a contract, the evidence "is to be viewed objectively, not subjectively." Id. Except in the clearest of cases, the question of whether the parties intended to contract is a factual one to be resolved by the finder of fact. Gerhold Concrete Co. v. St. Paul Fire and Marine Ins. Co., 695 N.W.2d 665, 672 (Neb. 2005). However, "[w]hen the provisions of an alleged contract being sued upon are so cursory, indefinite, and conditional as to fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby, no factual issues exist," Solar Motors, Inc. v. First Nat'l Bank of Chadron, 545 N.W.2d 714, 720

(Neb. 1996), and summary judgment is appropriate. See Viking Broad. Corp., 497 N.W.2d at 386; see also Diesel Power Equip., Inc. v. ADDCO, Inc., 377 F.3d 853, 857 (8th Cir. 2004).

Conolly argues that judgment as a matter of law was not justified because the terms of the oral agreement were sufficiently definite to demonstrate an objective intent to be bound in contract. Conolly asserts that Clark agreed to the purchase price and agreed that both the structure of the deal and other details could be worked out, and Conolly states that he and Clark shook hands to confirm their intentions. We note that "an 'agreement to agree' is not enforceable in Nebraska," Gerhold Concrete Co., 695 N.W.2d at 672, and "'[a] contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement.'" Diesel Power Equip., Inc., 377 F.3d at 857 (quoting Neb. Nutrients, Inc. v. Shepherd, 626 N.W.2d 472, 499 (Neb. 2001)).

The undisputed documentary evidence of subsequent ongoing negotiations indicates that the terms of the oral agreement were not sufficiently definite to demonstrate an objective intent to be bound at the time of the November 13, 2003, shake of the hands. While a purchase price was reached orally, subsequent e-mail correspondence indicates that the proposals on how to structure the deal were preliminary and that certain material terms, such as the assumption of debt, were still negotiable. Conolly's January 6, 2004, "**non-binding** letter of intent," which neither party signed, sets out several specific terms which were, in the words of Conolly's attorney, how "we believe the transaction would be structured." (Appellant's App. at 61.) The letter does not purport to be a mere memorialization of the terms orally agreed upon but clearly states the understanding that "this is merely a **non-binding** letter of intent, subject to Buyer's satisfaction of its investigation of Seller and the assets, and the execution by you and Buyer of the definitive purchase agreement, and does not represent a binding commitment by either Seller or Buyer." (Id. at 62.) The objective evidence thus demonstrates that the parties continued to negotiate in non-

binding terms after the alleged oral agreement. The district court did not err in concluding as a matter of law that the terms of the oral agreement were not sufficiently definite to indicate an objective intent to be bound. See Viking Broad. Corp., 497 N.W.2d at 386.

Conolly also argues that the district court failed to give him the benefit of all reasonable inferences to be drawn from the evidence by improperly focusing on his e-mail correspondence and ignoring his affidavit testimony. Conolly cites his own self-serving affidavit to establish a litany of specific contractual terms that he asserts were definite in the oral agreement. The district court relied upon an e-mail correspondence of November 20, 2003, in which Conolly set forth the purchase price that had been orally agreed upon but expressly indicated that the assumption of debt remained negotiable, and an e-mail dated December 12, 2003, stating, "Of course this is just preliminary and a formal proposal will be forthcoming once we reach an agreement." (Appellant's Add. at 15.) Conolly argues that the district court failed to acknowledge his affidavit testimony explaining that he had meant that the written terms were "preliminary" only in the sense that he anticipated a different document would serve as the final formal proposal consummating the oral agreement–not that a final agreement had not yet been reached.

There is no question that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). However, a properly supported motion for summary judgment is not defeated by self-serving affidavits. See Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."). Additionally, because Nebraska law demands objective manifestations of the parties' intent to be bound, see Viking Broad. Corp., 497 N.W.2d at 386, we cannot draw favorable inferences from

Conolly's unsupported, self-serving affidavit stating his subjective views. His subjective statements expounding on the terms of the oral agreement or explaining his use of the word "preliminary" in correspondence are immaterial to the question of whether there is an objective manifestation of an intent to be bound.

The objective evidence in this case–the e-mail correspondence subsequent to the alleged oral agreement and the non-binding letter of intent–shows continued negotiations and a subsequent unsigned draft document. See Diesel Power Equip., Inc., 377 F.3d at 857 (holding a letter of intent was not binding because "[t]he parties continued to negotiate and prepare subsequent documents, including at least two versions . . . neither of which was ever signed"); see also id. at 857-58 (noting that "[t]he Supreme Court of Nebraska has looked at subsequent draft documents as a sign that the parties did not intend to be bound by an earlier document"). The district court committed no error in concluding as a matter of law that there was no issue of material fact concerning whether the parties intended to be bound by the November 13, 2003, oral agreement.

Accordingly, we affirm the judgment of the district court.

_____