# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3859/3935

_____

Emergency Medical Services, Inc.;     \*
Islands Emergency Medical Service,   \*
Inc.; Edward B. Kinports, Jr., M.D.,   \*
                                     \*
      Appellees/Cross-Appellants,     \*
                                      \*   Appeal from the United States
      v.                              \*   District Court for the
                                      \*   Western District of Missouri.
St. Paul Mercury Insurance Company,   \*
a Minnesota Corporation,           \*
                                      \*
      Appellant/Cross-Appellee.       \*

_____

Submitted: September 29, 2006
Filed: July 26, 2007

_____

Before ARNOLD, BYE, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Dr. Douglas Rogers and his wife, Edwardine Reis-Rogers, (collectively, "Dr. Rogers")[1] brought suit against Emergency Medical Services, Inc., Islands Emergency Medical Service, Inc. ("Islands"), and Dr. Edward B. Kinports, Jr. (collectively,

_____

[1]Edwardine Reis-Rogers is named as a plaintiff in three of the six counts in the underlying state-court suit at issue here. However, because the conduct that led to that cause of action was directed toward Dr. Rogers, we will refer only to him in our discussion.

"EMS") in Hawaii state court ("the Underlying Lawsuit"), alleging several business torts, negligent and/or intentional infliction of emotional distress, and medical malpractice. EMS settled the Underlying Lawsuit with Dr. Rogers, and tendered a claim to its insurer, St. Paul Mercury Insurance ("St. Paul"), alleging coverage under the Commercial General Liability insurance policy ("the Policy"). St. Paul refused to reimburse EMS for the cost of its defense, and EMS brought a breach of contract suit in state court. After St. Paul removed the case to federal court, the parties filed cross-motions for partial summary judgment. The district court[2] granted EMS's motion, determining that St. Paul had a duty to defend EMS in the Underlying Lawsuit and that St. Paul breached this duty. The district court granted EMS's request for attorney fees expended in defending the instant lawsuit, but declined to award prejudgment interest to EMS. St. Paul appeals, arguing that the district court erred because EMS's claim is not covered by the Policy, that it was prejudiced by EMS's failure to provide timely notice of the Underlying Lawsuit, and that attorney fees were not proper or were unreasonable in this case. EMS appeals the denial of its claim for prejudgment interest. For the following reasons, we affirm.

I.    Background

Emergency Medical Services, Inc. is a Missouri corporation and Islands is a Hawaii corporation. During the time period relevant to this appeal, Dr. Kinports was the president, CEO, and director of both corporations. St. Paul is an insurance company authorized to do business in Missouri. On May 31, 1999, EMS entered into an agreement with St. Paul whereby St. Paul would provide insurance coverage to EMS. EMS was the named insured under the Policy. In relevant part, the Policy reads:

---

[2] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

**WHAT TO DO IF YOU HAVE A LOSS**

You or other protected persons are required to perform the duties described below when a property loss that may be covered under this policy happens or an accident or incident happens that could result in liability damages covered under this policy. . . .

**When This Policy Provides Liability Protection**

If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must: . . .

2. Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages. . . .

3. Send us a copy of all written demands. Also send us a copy of all legal documents if someone starts a lawsuit.

. . .

**What This Agreement Covers**

**Bodily injury and property damage liability.**

We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury and property damage that:

- happens while this agreement is in effect; and
- is caused by an event.

. . .

Bodily injury means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness, or disease:

- Mental anguish, injury, or illness.
- Emotional distress.
- Care, loss of services, or death.

Property Damage means:

- physical damage to tangible property of others, including all resulting loss of use of that property; or
- loss of use of tangible property of others that isn't physically damaged. . . .

Event means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

From 1981 until December 2000, Dr. Rogers provided medical services to Hawaii patients on behalf of Islands. On May 7, 2001, an attorney representing Dr. Rogers sent a demand letter to EMS. The letter discussed potential medical malpractice and business tort claims against EMS. On March 15, 2001, Dr. Rogers filed suit against EMS in Hawaii state court.

The original complaint alleged the following six counts: (I) promissory estoppel as to partnership representations; (II) negligent and/or intentional misrepresentations as to partnership representations; (III) promissory estoppel as to tax representations; (IV) negligent and/or intentional misrepresentations as to tax representations; (V) accounting; and (VI) negligent and/or intentional infliction of emotional distress. On August 8, 2002, Dr. Rogers filed his first amended complaint, which added a medical malpractice claim. Each claim was alleged alternatively and each was asserted as a separate, stand-alone claim.

Relevant to this appeal, the complaint alleged that in early summer of 1991, Dr. Rogers helped Dr. Kinports retain Islands's contract to provide emergency services for Kona Hospital, where Dr. Rogers was the Chairman of the Emergency

Department. Dr. Kinports represented to Dr. Rogers that from that point forward Dr. Rogers was an equal partner in Islands operations and would be compensated as such. The complaint stated that Dr. Rogers's partnership status was confirmed on subsequent occasions, including a September 13, 2000 press release that was attached to the complaint as an exhibit. Also, in addition to the business-related injuries in the complaint, Dr. Rogers also alleged that on June 22, 2000, Dr. Rogers suffered the first of a series of neurologic events known as transient ischemic attacks, or "mini-strokes." According to the complaint, Dr. Rogers's condition grew increasingly worse because of the actions and demands of Dr. Kinports. By January 19, 2001, a number of significant cerebral vascular accidents had left Dr. Rogers permanently unable to practice medicine, either as an emergency physician or as an administrator.

Count VI of Dr. Rogers's first amended complaint, entitled "Intentional and/or Negligent Infliction of Emotional Distress," alleged that "[EMS] inflicted pain, suffering, mental and emotional distress, anguish and humiliation on [Dr. Rogers] and their conduct and omissions in doing so were either negligent and/or intentional." The claim for negligent infliction of emotional distress ("NIED") incorporated by reference allegations made in all of the previous paragraphs of the complaint.

On September 16, 2002, EMS's controller sent an email to Aon Risk Services ("AON"), which was EMS's insurance broker and the company listed as St. Paul's agent in the Policy. The email was a follow-up to a telephone conversation the controller had approximately a week earlier with an AON representative. During this conversation, the controller requested that the AON representative put EMS's general liability carrier on notice of the Underlying Lawsuit. Several days after receiving the email, AON notified Hartford Fire Insurance Company ("Hartford"), but not St. Paul, of EMS's claim and demand for coverage and a defense. Hartford denied coverage in a letter dated March 17, 2003.

On April 10, 2003, the Hawaii state court approved a settlement of the Underlying Lawsuit between EMS and Dr. Rogers. The parties filed a stipulated dismissal of the Underlying Lawsuit, with prejudice, on June 16, 2003.

Once Hartford had denied coverage and during settlement negotiations with Dr. Rogers, EMS investigated its right to coverage and a defense from St. Paul. In a letter dated May 28, 2003, EMS provided direct notice of the Underlying Lawsuit to an employee of St. Paul for the first time. St. Paul refused to reimburse EMS for any of its losses incurred in defending the Underlying Lawsuit. On October 2, 2003, EMS filed this suit against St. Paul in Missouri state court, seeking defense costs and indemnity relating to the Underlying Lawsuit. St. Paul removed the case to the United States District Court for the Western District of Missouri.

On September 10, 2004, the parties filed cross-motions for partial summary judgment. The district court granted EMS's motion, determining that because Dr. Rogers's NIED claim was potentially within the Policy's coverage, St. Paul had a duty to defend EMS.[3] The court also found that EMS's notice to AON satisfied the Policy's notice requirement, but that in any case, St. Paul was not prejudiced by the delay in receiving notice. The parties then filed a joint stipulation as to the amount of reasonable defense costs owed to EMS as a result of St. Paul's breach of its duty to defend. In entering its judgment, the district court granted EMS's request for $143,807.09 in attorney fees and denied its request for prejudgment interest.

St. Paul appeals, arguing that the district court erred in finding that it had a duty to defend EMS under the Policy. First, St. Paul contends that the allegations of emotional distress made by Dr. Rogers in his first amended complaint do not constitute "bodily injury" as defined by the Policy, and that the first amended

---

[3]On October 15, 2004, EMS dismissed with prejudice its claim for indemnification.

complaint did not include allegations that any bodily injury Dr. Rogers suffered was "caused by an event." Second, St. Paul argues that Dr. Rogers's claims fell within exclusions contained in the Policy: an employee exclusion and an "expected or intended bodily injury" exclusion. Third, St. Paul argues that the district court erred when it found that EMS provided timely notice to St. Paul of the Underlying Lawsuit and that St. Paul was not prejudiced by the lack of notice. Fourth, St. Paul claims that the district court erred by finding that EMS was entitled to attorney fees, or in the alternative, that the amount of attorney fees granted was unreasonable. EMS cross-appeals the district court's denial of its claim for prejudgment interest. We review each of the parties' arguments in turn.

II.    Standard of Review

"[W]e review the district court's grant of summary judgment de novo, viewing the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. . . ." Conolly v. Clark, 457 F.3d 872, 874 (8th Cir. 2006). A grant of summary judgment is proper when there "'is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

Under Hawaii law, which the parties have agreed governs this dispute, insurance policies are subject to the general rules of contract construction, and their terms "should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended[.]" Dairy Rd. Partners v. Island Ins. Co., 992 P.2d 93, 106 (Haw. 2000) (quotation marks and citation omitted). However, the Hawaii Supreme Court has recognized insurance contracts as contracts of adhesion, and therefore "they must be construed liberally in favor of the insured and [any] ambiguities [must be] resolved against the insurer." Id. at 106-07 (quotation marks and citation omitted, alterations in original).

An insurer's duty to defend is broad and "arises wherever there is the mere *potential* for coverage." Tri-S Corp. v. Western World Ins. Co., 135 P.3d 82, 97 (Haw. 2006). "[T]he duty to defend rests primarily on the *possibility* that coverage exists." Id. Even if the possibility is remote, "the insurer owes the insured a defense." Id. "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." Id.

"The burden is on the insured to establish coverage under an insurance policy," State Farm Fire & Cas. Co. v. Gorospe, 106 F. Supp. 2d 1028, 1031 (D. Haw. 2000), whereas, "[t]he insurer has the burden of establishing the applicability of an exclusion." Id.

III.    Analysis

A.    Coverage Issues

St. Paul first argues that the district court erred in holding that Dr. Rogers's NIED claim is subject to a duty to defend under the Policy. Specifically, St. Paul argues that the allegations of emotional distress made by Dr. Rogers do not constitute "bodily injury" under the Policy and that the complaint does not include allegations that any bodily injury he suffered was "caused by an event" as required under the Policy. We agree with the district court that Dr. Rogers's claim of NIED is covered by the Policy.

As quoted above, under the Policy, "bodily injury" means "any physical harm, including sickness or disease, to the physical health of other persons." It includes any "mental anguish, injury, . . . illness[,] [e]motional distress[,] [c]are, loss of services, or death" that "results at any time from such physical harm, sickness, or disease[.]" St. Paul argues that the emotional distress Dr. Rogers suffered is not the "result[]" of "physical harm, sickness, or disease[.]" Instead, St. Paul argues, the emotional

-8-

distress Dr. Rogers suffered was the result of the business torts or the medical malpractice alleged in the complaint. We disagree. Dr. Rogers's NIED claim is a stand-alone claim, which incorporates by reference the physical injuries alleged at the beginning of the complaint. EMS and the district court's interpretation is the only plausible reading of the complaint because "physical injury to a person" is generally required under Hawaii law in order to state a claim for NIED. Calleon v. Miyagi, 876 P.2d 1278, 1288 (Haw. 1994); see John & Jane Roes, 1-100 v. FHP, Inc., 985 P.2d 661, 665 (Haw. 1999) (stating the "general rule" that, under Hawaii law, recovery for NIED "is permitted only when there is a predicate physical injury to *someone*"). Thus, a logical reading of the complaint leaves open the possibility that the emotional distress alleged in Count VI was caused by the physical injuries alleged earlier in the complaint.

St. Paul's reliance on CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975 (D. Haw. 1999), is misplaced. The court in CIM found that under the policy at issue, any "mental injury" must "arise out of a covered offense," and that the NIED claim in that case was asserted as a separate tort. Id. at 987. The court noted that "[a]t best, [the mental injury] arose from the previously-pled (uncovered) fraud, misrepresentation, contract, or promissory estoppel claims." Id. Here, however, the situation is different. Unlike the counterclaim at issue in CIM, Dr. Rogers's complaint alleges numerous physical injuries at the beginning of the complaint. Again, these injuries are incorporated by reference in Count VI, the NIED claim, at least leaving open the possibility of coverage under the policy. Dr. Rogers's claim of emotional distress is "bodily injury" because it is "emotional distress that results from . . . physical harm, sickness, or disease[.]"

St. Paul also contends that Dr. Rogers's complaint does not include allegations that any bodily injury he suffered was "caused by an event" as defined by the Policy. We find this argument unpersuasive as well. The Policy defines "event" as "an accident, including continuous or repeated exposure to substantially the same general

harmful conditions." To be an "accident," EMS's conduct must be unexpected. We do not believe that the "expected result" of EMS's conduct was the extensive neurological injuries that Dr. Rogers suffered. Cf. Hawaiian Ins. and Guar. Co. v. Blanco, 804 P.2d 876, 880 (Haw. 1990) (stating that "if the insured did something . . . , and the insured's expected result of the act or omission was the injury, then the injury was not caused by an accident"), rev'd on other grounds, Dairy Rd. Partners, 992 P.2d at 117. Dr. Rogers pleaded alternative theories and allegations, one of which was negligence.

EMS has met its burden of proving a possibility of coverage under the Policy.

B.     Exclusion Issues

St. Paul also appeals the district court's determination that the employee exclusion and the "expected or intended bodily injury" exclusion do not apply in this case. We agree with the district court that Dr. Rogers's claim does not fit within either exclusion at issue.[4]

---

[4] With regard to the employee exclusion, we note that our inquiry into whether Dr. Rogers was an employee or a partner is limited by the facts alleged in the complaint. See Dairy Rd. Partners, 992 P.2d at 117 (holding that an insurer may not rely on extrinsic facts that are "subject to dispute in the underlying lawsuit as a basis for disclaiming its duty to defend where the complaint in the underlying lawsuit alleges facts within coverage"). We consider any exhibits filed along with the first amended complaint to be part of the complaint. See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). The Dairy Road Partners court also adopted a limited exception, allowing an insurer "to rely upon extrinsic facts to disclaim liability only when the relevant facts 'will not be resolved by the trial of the third party's suit against the insured.'" Dairy Rd. Partners, 992 P.2d at 117. We do not believe that this exception applies in this case.

The Policy excludes "bodily injury to an employee of the [insured] arising out of and in the course of his or her: employment by the [insured]; or performance of duties related to the conduct of the [insured's] business." St. Paul argues that the Policy's employment exclusion applies because Dr. Rogers was an employee of EMS. St. Paul points to instances in the first amended complaint that refer to Dr. Kinports as Dr. Rogers's "employer" and the W2 forms Dr. Rogers attached to his complaint. St. Paul contends that Dr. Rogers was treated like an employee, and is therefore an employee for purposes of this exclusion. EMS argues that because Dr. Rogers's complaint alleged he was an equal partner with Dr. Kinports, the employee exclusion does not apply.

The complaint alleges that Dr. Rogers was hired by EMS in September of 1981. On March 1, 1985, Dr. Rogers became Medical Director for Islands. There is no doubt that Dr. Rogers was an employee of EMS during this time period. The complaint then alleges, however, that in early summer of 1991, Dr. Kinports told Dr. Rogers that he "was an equal partner with him in the [Islands] operations and that he would be compensated for that to the same extent as Dr. Kinports." The complaint also alleges that "Dr. Rogers's partnership status was thereafter confirmed on various occasions" by EMS. One of those occasions was a press release, attached to the complaint as an exhibit.

We recognize that the complaint does refer to Dr. Kinports as Dr. Rogers's employer a number of times, and that Dr. Rogers filed W2 forms. However, because the complaint alleges that Dr. Rogers became a partner in 1991, the employee exclusion does not apply in this case. For purposes of determining whether a duty to defend exists, we resolve all doubts in favor of the insured. Tri-S Corp., 135 P.3d at 97. The alleged facts regarding partnership provide the possibility that Dr. Rogers is a partner; therefore, St. Paul has a duty to defend EMS.

-11-

St. Paul also argues that the Underlying Lawsuit contains allegations of conduct on the part of EMS that resulted in "expected or intended bodily injury," which is expressly excluded under the policy. As we noted above, Dr. Rogers's complaint included a claim for NIED and alleged facts supporting that claim. Therefore, St. Paul's argument that any bodily injury was "expected or intended" has no merit.

St. Paul has not met its burden of proving that any of the policy exclusions apply in this case.

C. Notice

St. Paul also argues that the district court erred in finding that EMS met the Policy's notice requirement and alternatively that St. Paul was not prejudiced by the delay. We agree with the district court that St. Paul was not prejudiced.

The Policy requires the insured to "[t]ell [St. Paul] or [i]ts agent what happened as soon as possible" "[i]f an accident or incident happens that may involve liability protection provided" in the Policy. The Policy also requires the insured to "[s]end [St. Paul] a copy of all written demands" and to "send [St. Paul] a copy of all legal documents if someone starts a lawsuit."

As discussed above, a little over one month after Dr. Rogers filed his first amended complaint, an EMS representative sent an email to AON, following-up on his request that AON put EMS's general liability carrier on notice of the Underlying Lawsuit. After receiving the email, AON notified Hartford, but not St. Paul, of EMS's claim for coverage. EMS did not directly notify a St. Paul employee until after the Underlying Lawsuit was settled, in late May of 2003. EMS argues that its initial notice to AON satisfies the Policy's notice requirement. The Policy provides that if the insured fears potential liability, it should "[t]ell [St. Paul] or [its] agent what happened as soon as possible." As the district court noted, the first page of the Policy

lists "AON Risk Services" as the "AGENT." AON is labeled as the "Agent" or "Authorized Representative" in other areas throughout the Policy. AON is the only entity the Policy refers to as St. Paul's "agent." St. Paul argues that it was only coincidental that AON was both EMS's insurance broker and St. Paul's agent according to the Policy, thus notice to AON in this case does not constitute notice to St. Paul.

We decline to further assess the sufficiency of EMS's notice to St. Paul because even if it were insufficient under the Policy, St. Paul cannot show prejudice due to the lack of notice. As a federal court sitting in diversity we apply substantive Hawaii law as "declared by its Legislature in a statute or by its highest court in a decision." Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Hawaii Supreme Court has suggested that "even where the insurer can show untimely notice on the part of its insured, the insurer will additionally be required to show that it was prejudiced by the late notice in order to deny coverage under the policy." Great Am. Ins. Co. v. AETNA Cas. and Sur. Co., 876 P.2d 1314, 1319 (Haw. 1994) (citing Standard Oil Co. of Cal. v. Haw. Ins. & Guar. Co., 654 P.2d 1345, 1348 n.4 (Haw. 1982). The Hawaii Supreme Court has held that this is dicta, however, and has reserved the question for when the court is "faced with the proper case." Id. Subsequent to Great American Insurance Company, our court held that Hawaii law "require[s] an insurer to demonstrate it suffered prejudice by the insured's untimely notice before the insurer can escape its obligations." Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003). While we note that this statement may not be entirely accurate, we are required to follow circuit precedent. Moreover, we believe that when faced with the issue, the Hawaii Supreme Court will determine that in order to be relieved of its duty to defend, the insurer must show prejudice when there is untimely notice by the insured.

St. Paul claims it was prejudiced by EMS's untimely notice because it "denied St. Paul the opportunity to investigate the facts of the underlying case, to enter into its

own settlement negotiations, to hire its own defense counsel, to choose a trial strategy, to challenge liability, to dispute the amount of damages[,] and to control defense costs." St. Paul's main authority for this proposition, <u>Interstate Cleaning Corp.</u>, can be distinguished. In that case, the insured, who was suing for a breach of the duty to defend *and* indemnification, did not tell the insurer about the underlying lawsuit until after the suit had gone to trial and a jury award had been rendered. <u>Id.</u> at 1029. EMS, on the other hand, dismissed with prejudice its claim for indemnification. It is not asking to be reimbursed for the amount it paid to settle the Underlying Lawsuit. St. Paul, therefore, cannot argue that it was prejudiced by an inability choose a trial strategy or challenge liability.

EMS's only request is that St. Paul pay for the attorney fees and costs associated with defending against Dr. Rogers's state-court claim. While it is true that St. Paul may have been unable to hire its own defense counsel, enter into its own settlement negotiations, dispute the amount of damages, or control defense costs, St. Paul stipulated as to a reasonable amount of attorney fees and costs for settling the Underlying Lawsuit. That amount, $475,000, is what EMS is seeking to be reimbursed because of the district court's decision that St. Paul breached its duty to defend. St. Paul has not shown that it would have spent less money in defending against Dr. Rogers's claims than EMS did. Therefore, we affirm the district court's decision that St. Paul has not shown prejudice in this case.

D.     Attorney Fees

The district court granted EMS's request for attorney fees in the instant lawsuit in the amount of $143,807.09. St. Paul argues that attorney fees are not proper under Hawaii law because the duty to defend is not a "benefit" as defined by Haw. Rev. Stat. § 431:10-242, and that, even if the duty to defend is a benefit, the fees the district court awarded are unreasonable. Both of these arguments are without merit.

-14-

We review a district court's grant of attorney fees for abuse of discretion. Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005). Whether such fees are appropriate under a particular statute, however, is a question of law, which we review de novo. See Christina A. v. Bloomberg, 315 F.3d 990, 994 (8th Cir. 2003).

Unless specifically provided by a contract or statute, "a litigant has no inherent right to have his attorney[] fees paid by his opponent." Mikelson v. United Servs. Auto. Ass'n, 120 P.3d 257, 259 (Haw. 2005) (quotation omitted). EMS asserts that it is entitled to an award of attorney fees pursuant to Haw. Rev. Stat. § 431:10-242, which provides in part:

> Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder . . . shall be awarded reasonable attorney[] fees. . . ."

Haw. Rev. Stat. § 431:10-242.

St. Paul argues that § 431:10-242 does not apply here because the district court has not ordered it to "pay benefits." It contends that the district court's order to pay for the defense is not a "benefit" under the statute the way an order of indemnification would be. According to St. Paul, because EMS dismissed with prejudice its claim for indemnification, § 431:10-242 should not apply. We disagree. A court order of indemnification is not required under § 431:10-242. See Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, 875 P.2d 894, 914 (Haw. 1994) (affirming an award of fees and costs for an insurer's breach of the duty to defend and for bringing the declaratory relief action). Where, as here, the insurer contests coverage, the district court determines that the insurer breached its duty to defend, and the court orders the insurer to pay the attorney fees and costs of the defense of the underlying claim, attorney fees are appropriate under § 431:10-242.

-15-

In the alternative, St. Paul argues that the amount of attorneys fees awarded is unreasonable. See Sharp v. Hui Wahine, Inc., 413 P.2d 242, 248-49 (Haw. 1966). The amount of attorney fees awarded in this case do not reflect an abuse of discretion. The district court ordered EMS to provide a "line-by-line" explanation of each entry St. Paul challenged. The court then ruled that the fees requested by EMS, "when viewed in the context of the case . . . prove[d] to be quite reasonable." As the court noted, EMS was required to respond to numerous defenses, and the requested fee amount "equals thirty percent of the judgment, a percentage common in contingency fee arrangements for the legal market."

Additionally, the district court did not abuse its discretion by refusing to deduct the hours spent on the dismissed indemnification claim. As the court pointed out, "the indemnification claim involved many of the same issues as the duty to defend claim." The court's award of $143,807.09 is reasonable.

E.      Prejudgment Interest

The district court denied EMS's request for prejudgment interest, stating "that a court may deny prejudgment interest where an extraordinary damage award has already adequately compensated the plaintiff, or the defendant's conduct did not cause any delay in the proceedings." See Metcalf v. Voluntary Employees' Benefit Ass'n of Hawai'i, 52 P.3d 823, 831 (Haw. 2002). "[A]n award of prejudgment interest is reviewed for abuse of discretion." Tri-S Corp., 135 P.3d at 106. The availability of a particular remedy, however, "is a question of law which we review de novo." Entergy Ark., Inc. v. Nebraska, 358 F.3d 528, 556 (8th Cir. 2004).

Hawaii law provides for discretionary awards of prejudgment interest. Haw. Rev. Stat. § 636-16; see Tri-S Corp., 135 P.3d at 106 ("An award of prejudgment interest is authorized under HRS § 636-16[.]"); Larsen v. Pacesetter Sys., Inc., 837 P.2d 1273, 1296-97 (Haw. 1992). Section 636-16 provides:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date . . . in cases arising by breach of contract, it may be the date when the breach first occurred.

Haw. Rev. Stat. § 636-16. EMS argues that a different statute, § 478-2,[5] which it argues mandates an award of interest in certain cases, should apply here. To the extent that § 478-2 applies in this case, EMS's argument fails because the Hawaii Supreme Court has clearly stated in Tri-S Corp., and other cases that Hawaii law authorizes an award of pre-judgment interest at the discretion of the court. Id. at 106; see Eastman v. McGowan, 946 P.2d 1317, 1324 (Haw. 1997) ("Prejudgment interest, where appropriate, is awardable under [Haw. Rev. Stat.] § 636-16 (1993) in the discretion of the court."). Section 478-2, which is titled "Legal rate; computation," is a general statute that governs interest payments on civil judgments generally, and is used to set the rate of prejudgment interest. See Eastman, 946 P.2d at 1324 (stating that prejudgment interest is proper under § 636-16 and that "§ 478-2 provides for a rate of ten percent per year. . . ."). Section 636-16, however, is the authorizing statute for the award of prejudgment interest specifically, and that statute is discretionary. The district court properly applied § 636-16 in this case.

EMS argues in the alternative that if Haw. Rev. Stat. § 636-16 applies, the district court abused its discretion by "failing to find a legally permissible basis to deny an award." It is within the discretion of the court to deny interest pursuant to § 636-16 "where appropriate, for example, where: (1) the defendant's conduct did not cause the delay in the proceedings; (2) the plaintiff himself has caused or contributed to the delay in bringing the action to trial; or (3) an extraordinary damage award has already adequately compensated the plaintiff." Roxas v. Marcos, 969 P.2d 1209, 1271

[5]Haw. Rev. Stat. § 478-2 provides: "When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten percent a year. . . ."

(Haw. 1998) (citations omitted).  The parties in this case stipulated that the damage award was reasonable.  Thus, it seems misplaced for the district court to base its denial of prejudgment interest on the fact that the damages were extraordinary.  It is within the court's discretion, however, to determine that St. Paul's conduct did not cause a delay in litigation and deny interest on this basis alone.  <u>See</u> <u>Tri-S Corp.</u>, 135 P.3d at 107 (agreeing that the denial of prejudgment interest is generally affirmed if "the requesting party caused the delay or the opposing party did not cause the delay").  EMS has not shown that St. Paul caused any delay in litigation.  The district court did not abuse its discretion in denying prejudgment interest to EMS.

V.    Conclusion

For the foregoing reasons, we affirm the district court's judgment in this case.

_____